NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with FED. R. APP. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted January 18, 2022[*]
Decided February 7, 2022

**Before**

DAVID F. HAMILTON, *Circuit Judge*

MICHAEL B. BRENNAN, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

No. 21-2550

| | |
|---|---|
| NAJIY-ULLAH AZIYZ, *Plaintiff-Appellant*, | Appeal from the United States District Court for the Western District of Wisconsin. |
| *v.* | No. 3:20-cv-00896-wmc |
| CAMECA, INC., et al., *Defendants-Appellees*. | William M. Conley, *Judge*. |

**O R D E R**

Plaintiff Najiy-Ullah Aziyz sued Cameca, Inc. for briefly rescinding its offer of employment. A week after Aziyz accepted a job offer at Cameca, he was told that, because of a previous felony conviction, the job offer was being rescinded. The next day, however, Cameca contacted him again to explain that the rescission had been a

---

[*] We agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. Fed. R. App. P. 34(a)(2)(C).

mistake and that the job was still his. Despite Cameca's assurances, Aziyz alleges, he still had doubts. On the day of his orientation, he sent an email saying he would not work for Cameca. He later filed this suit alleging race and age discrimination and a violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681b. The district court dismissed the case for failure to state a claim. We affirm. Even taking Aziyz's factual allegations at face value, he has failed to allege that Cameca took any adverse employment action against him.

Aziyz is African American and over the age of 40. He interviewed with Cameca and accepted a job offer conditioned on an acceptable background report. The next week, after receiving the report from a third-party vendor called HireRight, Cameca told Aziyz that he was cleared to begin work. The company asked him to complete tax forms and established his start date. Because the position called for remote work, Cameca planned to send a laptop computer and cell phone to Aziyz.

The background report revealed no issues, but Cameca human resources manager Anne Stroud noticed inconsistencies in the report regarding Aziyz's graduation date, age, and work history. Her observations prompted Cameca to perform an additional internet search for more information about Aziyz, which revealed that he had been convicted of a felony nearly thirty years earlier. Stroud called Aziyz and explained that his would-be supervisor had been informed of his conviction and that, because of the conviction, his job offer was being rescinded.

The next day, however, Stroud called back to tell Aziyz that she had been mistaken and that the position was still his. Steven Turnbull, Cameca's vice president of human resources, also called Aziyz to apologize. Turnbull followed up with an email to Aziyz reaffirming Cameca's offer of employment and confirming Aziyz's start date. The next day, Aziyz emailed Turnbull expressing reservations about starting the job. Aziyz asked how Cameca could ensure that he would not be unfairly targeted and if he could have a different supervisor or work in a different department. Turnbull replied that Cameca was committed to treating him fairly and that its decision to hire him should assure him of that. Aziyz did not respond further that day.

The next day, on Cameca's planned start date for Aziyz, Turnbull again emailed Aziyz to ask if he intended to start work. Aziyz replied that he did not and that he would not work for Cameca. He explained that he feared retaliation and did not believe the job offer was in "good faith." Aziyz had not yet received from Cameca the laptop computer and phone. Cameca later hired someone who was younger and not African American for the position.

Aziyz sued, alleging violations of Title VII of the Civil Rights Act, the Age Discrimination in Employment Act, and the Fair Credit Reporting Act. According to Aziyz, Cameca's policy of considering job candidates' criminal convictions has a racially disparate impact on African American applicants. He reasoned that African Americans are incarcerated at a higher rate than whites, so searches were more likely to uncover prior convictions that disqualify them as candidates. He also asserted that Cameca's decision to hire a younger candidate after Aziyz turned down the job amounted to age discrimination. He also alleged that Cameca's failure to disclose the HireRight background report before rescinding the job offer violated the Fair Credit Reporting Act. Aziyz also raised several state-law claims. Cameca moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

The district court granted the motion to dismiss the discrimination claims, finding that Aziyz had failed to plead adequately an adverse employment action. Aziyz admitted that he rejected the job offer after repeated assurances from Cameca that the job was his. The court also dismissed Aziyz's claim under the Fair Credit Reporting Act, again finding that he had not alleged any adverse action stemming from the background report. With no federal claims left, the district court declined to exercise jurisdiction over the state law claims. Aziyz appeals only the dismissal of his federal claims.

Aziyz argues that he alleged a sufficient connection between Cameca's practice of investigating and considering old criminal convictions and a disparate impact on African American job applicants. Ayziz's discrimination claims fail because his allegations show that he did not suffer an adverse employment action, which is an essential element of his race- and age-discrimination claims. See *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (Title VII race discrimination); *Barton v. Zimmer, Inc.*, 662 F.3d 448, 453 (7th Cir. 2011) (ADEA).[1]

Aziyz insists that Cameca had no intention of following through on its job offer after discovering his criminal conviction. But speculative future adverse action is not adverse action. See *Nagle v. Village of Calumet Park*, 554 F.3d 1106, 1121 (7th Cir. 2009) (affirming summary judgment for employers; suspension that was never served did not amount to adverse action); *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 531 (7th

---

[1] We do not mean to suggest that a plaintiff must *plead* the elements of an employment discrimination claim. See generally *Kaminski v. Elite Staffing, Inc.*, — F.4th —, —, No. 21-1616, 2022 WL 168260 (Jan. 19, 2021) (discussing pleading requirements). But in this unusual case, Aziyz has pleaded himself out of court. His own allegations show that he suffered no adverse employment action.

Cir. 2003) (affirming summary judgment for employer in relevant part; announced plan to demote plaintiff was never carried out: "An unfulfilled threat, which results in no material harm, is not materially adverse."). Aziyz's own allegations show that he did not confirm his willingness to start work but instead rejected Cameca's job offer on the morning his orientation was to begin.

Aziyz's rejection of the job offer also defeats any argument that Cameca's failure to send the laptop and phone showed that it did not intend to follow through on the job offer. Moreover, in his email rejecting the job offer, Aziyz did not identify the lack of a laptop computer or phone as a basis for his refusal to start work, nor did he allege that he ever told Cameca during the numerous conversations leading up to his orientation that he had not received them.

Aziyz's rejection of the job offer also dooms his age-discrimination claim. To state a claim of age discrimination under a failure-to-hire theory, Aziyz must assert that he was passed over in favor of a similarly situated younger applicant. See *Sembos v. Philips Components*, 376 F.3d 696, 700 (7th Cir. 2004). Aziyz admits, though, that Cameca persisted in its job offer, and he rejected it. Accordingly, Cameca's later hiring of a younger applicant to fill the position Aziyz turned down cannot rescue this claim.[2]

Finally, Aziyz argues that the district court erred in dismissing his claim under the Fair Credit Reporting Act because HireRight's report caused Cameca to revoke, temporarily, his job offer. Under the Act, an employer must, before taking any adverse action against a job applicant based on a consumer report, provide a copy of it to the applicant. 15 U.S.C. § 1681b(b)(3)(A); see *Robertson v. Allied Solutions, LLC*, 902 F.3d 690, 695–96 (7th Cir. 2018). Cameca does not dispute that HireRight's background report qualifies as such a report or that Aziyz was entitled to receive a copy of the report if it caused an adverse action. But the district court correctly reasoned that the temporary rescission of the offer does not satisfy the Act's definition of "adverse action," which requires "a denial of employment" or a "decision for employment purposes that adversely affects any … prospective employee." § 1681a(k)(1)(B)(ii). Cameca did not deny Aziyz employment or otherwise make an employment decision that harmed him.

---

[2] Cameca argues on appeal that the absence of an alleged adverse employment action means that Aziyz lacks constitutional standing, citing dicta in *Melendez v. Illinois Bell Telephone Co.*, 79 F.3d 661, 668 (7th Cir. 1996). *Melendez*, however, affirmed a jury verdict for an age-discrimination plaintiff and did not blur the line between jurisdiction and merits. More generally, our cases treat adverse action as an element of a plaintiff's claim on the merits rather than as a separate jurisdictional issue. We agree with the district court that Aziyz's claims fail on the merits, not for lack of jurisdiction.

We also agree with the district court that even if there had been a conceivable harm under the Act, it would have stemmed from the independent investigation and not, as is required, from HireRight's report. Aziyz alleges in his amended complaint that the background report did *not* reveal his criminal conviction. The basis of Cameca's temporary rescission was the company's additional, independent internet investigation, not the report itself.

AFFIRMED.